UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

CHARLES AKBAR HALL,

                                        Petitioner,

            vs.                                    9:01-CV-665
                                                   (J. Sharpe)
VICTOR T. HERBERT,
Superintendent,

                                        Respondent.

_____

APPEARANCES                        OF COUNSEL

CHARLES AKBAR HALL
96-A-0212
Petitioner pro se
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582-0010

ELIOT SPITZER                      STEVEN H. SCHWARTZ
Attorney General of the            Principal Attorney
State of New York
Attorney for Respondent
The Capitol
Albany, New York 12224-0341

GUSTAVE J. DI BIANCO, Magistrate Judge

### REPORT-RECOMMENDATION

     This matter has been referred to me for Report and Recommendation by the

Honorable Gary L. Sharpe, United States District Judge, pursuant to 28 U.S.C. §

636(b) and Local Rules N.D.N.Y. 72.3(c).

Petitioner has brought this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner complains of a judgment of conviction of the Albany County Court, entered on January 10, 1996, after a jury found petitioner guilty of Criminal Sale of a Controlled Substance, Third Degree, upon which he was sentenced to a term of 12 ½ to 25 years imprisonment.

After his conviction, petitioner filed a motion to vacate the conviction pursuant to N.Y. CRIM. PROC. LAW § 440.10 which was denied by the Albany County Court on June 7, 1998.  The Appellate Division, Third Department affirmed petitioner's conviction and the denial of the section 440.10 motion on January 13, 2000. *People v. Hall*, 268 A.D.2d 682, 701 N.Y.S.2d 489 (3d Dep't 2000).  The New York Court of Appeals denied leave to appeal on March 9, 2000, and denied reconsideration on May 11, 2000. *See People v. Hall*, 94 N.Y.2d 920, 708 N.Y.S.2d 359, 729 N.E.2d, 1158 (2000), *reconsideration denied*, 95 N.Y.2d 797, 711 N.Y.S.2d 165, 733 N.E.2d 237 (2000).

Petitioner's original application for habeas relief raised four claims:

1.      The Albany County Court judge abused his discretion during the hearing of petitioner's section 440.10 motion when he improperly prevented petitioner from calling his trial counsel as a witness.

2.      Petitioner's trial counsel was ineffective.

3.      The prosecution violated *People v. Rosario*,[1] and *Brady v. Maryland*[2] when it failed to disclose or preserve the tape recorded conversation between the arresting officers and the police dispatcher.

4.      The prosecution violated *Brady v. Maryland* when it failed to produce the arrest report of Doris Everett, the person to whom petitioner sold the cocaine.

On September 17, 2001, respondent filed his answer and memorandum of law, together with the pertinent state court records[3] in opposition to petitioner's application. (Dkt. Nos. 7, 8).  Respondent argued for dismissal based on procedural defaults as well as on the lack of merit. (Dkt. No. 8).  On January 16, 2002, petitioner moved to compel discovery. (Dkt. No. 11).  Although respondent opposed the petitioner's motion in general, respondent did submit the transcript of petitioner's sentencing for *in camera* review.  I denied the motion to compel because petitioner had never obtained leave of court to engage in discovery as required by the Rules Governing Habeas Corpus Proceedings, 28 U.S.C. fol. § 2254, Rule 6. (Dkt. No. 15).

On August 20, 2002, petitioner moved for a stay of proceedings so that he could return to the State courts to exhaust an additional claim. (Dkt. No. 18).  On

---

[1] *People v. Rosario*, 9 N.Y.2d 286, 173 N.E.2d 881, 213 N.Y.S.2d 448 (1961), *cert. denied*, 368 U.S. 866 (1961).

[2] *Brady v. Maryland*, 373 U.S. 89 (1963).

[3] The state court records are listed on page 2 of the respondent's answer. (Dkt. No. 7).

October 3, 2002, the Honorable Lawrence E. Kahn, to whom this case was originally assigned, granted petitioner's motion for a stay. (Dkt. No. 20).  Judge Kahn's order stated that petitioner was required to keep this court informed of the status of the state court proceedings and was required to return to federal court within 30 days after the completion of the state court proceedings. (Dkt. No. 20).

On November 5, 2002, petitioner filed a motion to add his newly exhausted claim of ineffective assistance of appellate counsel. (Dkt. No. 23).  I authorized the granting of his motion on the same date. (Dkt. No. 23).  On December 18, 2002, petitioner filed his "Addendum" outlining his new claim. (Dkt. No. 24).  On January 6, 2003, respondent filed a memorandum of law in opposition to the new claim, arguing that petitioner had failed to properly exhaust ineffective appellate counsel. (Dkt. No. 25).  Thus, petitioner presents five claims for this court's review. For the following reasons, this court finds that the petition should be denied and dismissed.

## DISCUSSION

1.   <u>Facts</u>

At approximately 10:00 p.m. on September 14, 1994, Officers John Monte and Christopher Boardman were in a wooded lot across from 34 North Swan Street in the City of Albany, New York. Record on Appeal (RA) at 292-93.  The officers

4

had received information indicating that drug transactions had been occurring at 34 North Swan Street, and Officer Monte testified that he had made previous arrests in the same area. (RA. at 293).  The officers had positioned themselves in the wooded lot behind a chain link fence, approximately 25 to 30 feet from 34 North Swan Street. (RA. at 294-95).  Both officers testified that the weather was clear, there was nothing to obstruct their view of 34 North Swan Street, and there were "anti-crime" lights on Swan Street making the area bright as "daylight." (RA. at 294-95, 370-72).

Officer Monte stated that he saw a woman, later identified as Doris Everett, approach two individuals who were sitting on the steps of 34 North Swan Street. (RA. at 296).  Ms. Everett had a brief conversation with one of the men, who was later identified as petitioner. (RA. at 296).  After the brief conversation, the man stood up, he and Ms. Everett walked a couple of steps next to the building, and Ms. Everett gave the man what appeared to be currency. (RA. at 296).  Officer Monte testified that after Ms. Everett handed petitioner the currency, petitioner took something out of his mouth and handed it to Ms. Everett. (RA. at 296).  Officer Monte stated that, based on these observations and his experience, he was almost positive that there had been a drug transaction between petitioner and Ms. Everett. (RA. at 298).

Ms. Everett took the item that petitioner handed to her and began walking

5

north on North Swan Street, placing the item in her right front pants pocket. (RA. at 297). Officer Monte testified that as Ms. Everett walked away, petitioner sat back down on the stairs. (RA. at 297). Ms. Everett then walked toward Livingston Avenue, and the officers left the spot where they had observed the transaction in an attempt to follow Ms. Everett. (RA. at 298). They caught up to Ms. Everett on Livingston Avenue, stopped her, and asked if she had anything that she was "not supposed to have." (RA. at 299). Ms. Everett answered "yes," and Officer Monte asked her to produce the item. (RA. at 299). Ms. Everett reached into her front pants pocket and handed Officer Monte a small bag, containing what Officer Monte believed to be crack cocaine. (RA. at 299).

Officer Monte testified that Ms. Everett gave the officers a description of the man who sold her the drugs. (RA. at 300). The officers arrested Ms. Everett, put her in their police car, and called for a "paddy" wagon to transport her to the police station. (RA. at 300). Once the paddy wagon arrived, and Ms. Everett was secured, the officers called the dispatcher and told him that they were returning to 34 North Swan Street to try and arrest the seller. (RA. at 301). Officer Monte testified that approximately ten minutes had elapsed between the sale and when the officers returned to North Swan Street. (RA. at 301).

When the officers returned to North Swan Street, they observed petitioner

6

still sitting on the steps of 34 North Swan. (RA. at 302).  He was wearing black

pants, a blue sweatshirt with writing on it, and a red baseball cap. (RA. 302).

Officer Monte testified that as soon as the officers saw petitioner, he got up and

began to walk away from 34 North Swan Street. (RA. at 302).  Officer Monte stated

that it looked like petitioner put something in his mouth. (RA. at 302).  Officer

Monte also testified that when the officers caught up to petitioner, he was placed

under arrest "without incident." (RA. at 302).  Both officers identified petitioner as

the man that they saw engaging in the transaction with Ms. Everett. (RA. at 302-03,

376).

Ms. Everett also testified for the prosecution.  Although her testimony

regarding the events was consistent with the officers' testimony,[4] she could not

identify petitioner as the man who sold her the crack cocaine. (RA. at 349).  At the

police station, Ms. Everett gave the officers a statement, which she acknowledged

making and signing, however, at trial, she could not independently remember what

the seller was wearing. (RA. at 348-51).  At trial Ms. Everett stated that she just

---

[4] There were small discrepancies such as Ms. Everett's statement that the police took the drugs out of her pocket, while the officers testified that she gave them the cocaine. *Compare* (RA. at 299)(Officer Monte's testimony) *with* (RA. at 358)(Ms. Everett's testimony).  Ms. Everett also testified that after the officers took the drugs from her and arrested her, they did not ask where she obtained the drugs, (RA. at 347), however, the officers testified that she gave them a description of the man who sold her the drugs. (RA. at 300).  On cross examination, Ms. Everett testified that the lighting was "dim", but "light enough for you to see." (RA. at 356).  She stated that it was ***not***, however, "like daylight" (RA. at 356), as the officers had testified.

remembered "some dark pants" and that when "I did things, I don't [sic] look, I just take [sic] and go." (RA. at 349).  Ms Everett stated that as a result of the incident, she "had to pay a fine," however, she could not remember whether she pled guilty to possession of cocaine. (RA. at 348).

Although no drugs were found on petitioner, he had $ 15.00 in currency in one pocket, and another sum of money in a separate pocket. (RA. at 377). The testimony was that Ms. Everett had paid $ 15.00 for her crack cocaine. (RA. at 344-45).

## 2.   **Standard of Review**

The standard of review in a habeas action depends upon whether the state court considered petitioner's constitutional claims "on the merits."  The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that a federal court lacks the power to grant a writ of habeas corpus under 28 U.S.C. § 2254 unless the state court ruling ***on the merits*** of a federal constitutional issue was either "'contrary to ... clearly established Federal law' or 'involved an unreasonable application ... of clearly established Federal law.'" *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001)(quoting 28 U.S.C. § 2254(d)(1))(alterations in original).  The statute further provides that the court may grant a writ of habeas corpus when a claim that was considered on the merits by the state court "resulted in a decision that was

based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Prior to the AEDPA, the court was not required to defer to state court

determinations on pure questions of law and mixed questions of law and fact.

*Thompson v. Keohane*, 516 U.S. 99, 107-13 (1995). When presented with these

questions, the court was empowered to conduct an independent review of the

record. *Id.* The factual findings of the state court, however, were presumed to be

correct absent circumstances listed in the statute, such as cases in which the factual

finding was not fairly supported by the record. 28 U.S.C. § 2254(d) & (d)(8). The

AEDPA requires the court to apply a more deferential standard, placing new

restrictions on the power of federal courts to grant writs of habeas corpus to state

inmates. *Williams v. Taylor*, 529 U.S. 362, 399 (2000).

In order to apply the AEDPA standard, the petitioner's claim must have been

"adjudicated on the merits" in the State court proceedings. 28 U.S.C. § 2254(d)(1).

Additionally, the AEDPA provides that a state court's fact findings are presumed

correct, unless that presumption is rebutted by clear and convincing evidence. *Id.*

§ 2254(e)(1). If the State court has failed to adjudicate a claim "on the merits", the

pre-AEDPA standard of review applies, and the court reviews both questions of law

and mixed questions of law and fact *de novo. Washington v. Shriver*, 255 F.3d 45,

55 (2d Cir. 2001).

**3.    Denial of Witness at Section 440.10 Hearing**

Petitioner claims that the trial court judge, who also presided over petitioner's section 440.10 motion to vacate, abused his discretion when he denied petitioner's request to call his trial attorney as a witness during the hearing on the motion to vacate. After petitioner's conviction, and before his direct appeal, petitioner moved to vacate his conviction in the trial court. Petitioner raised his *Rosario/Brady* claims as well as his ineffective assistance of trial counsel claim. Petitioner was ***appointed counsel and afforded an in-person hearing*** on this motion. The trial judge appointed Paul J. Evangelista, Esq., the same attorney who had been appointed to handle petitioner's direct appeal.

The purpose of the in-person hearing was to determine whether the prosecutor denied petitioner *Rosario*[5] material when the prosecutor allegedly failed to produce the "tape" of a conversation between the police dispatcher and Officer Monte and whether he denied petitioner *Brady* material by failing to produce Doris Everett's arrest report prior to trial. The hearing took place on December 12, 1997

---

[5] Under *People v. Rosario*, 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961), *cert. denied*, 368 U.S. 886 (1961), the prosecutor is required to produce any prior statements of a witness that the prosecution intends to call at trial. In *Rosario*, the court held that "a right sense of justice entitles the defense to examine a witness' prior statement." *Id.* N.Y. 2d at 289, 213 N.Y.S.2d at 450, 173 N.E.2d at 883. The court in *Rosario* relied in part on the Supreme Court decision in *Jencks v. United States*, 353 U.S. 657, 667, 668 (1957).

and December 23, 1997.  Respondent has produced a transcript of the hearing.  At the hearing, petitioner's counsel called Officers Monte and Boardman as witnesses. Petitioner's counsel also called Peter J. Blanchfield, Esq., the prosecutor assigned to petitioner's case.

Near the end of the testimony on the first day of the hearing, there was a discussion between petitioner, petitioner's counsel, and the court about calling Eugene Grenz, Esq., petitioner's trial counsel, as a witness. Transcript of Section 440.10 Hearing (T) at 50-52.  The court asked petitioner's counsel what questions he proposed to ask Mr. Grenz. (T. at 50).  Counsel stated that there would probably be no questions if the scope of the hearing was limited to the alleged *Rosario* violation, but that petitioner had also claimed ineffective assistance of trial counsel, and questions could be posed to trial counsel regarding that claim. (T. at 50).

At that time, the judge stated that he was not going to allow petitioner to call counsel to "impeach him for that purpose" (T. at 50), but that he would allow trial counsel to be called if he could contribute any information to the *Rosario* inquiry. (T. 50-51).  However, the court then stated that petitioner might wish to call Mr. Grenz, particularly if the prosecutor would "call [Grenz] anyway." (T. at 51).

On the second day of the hearing, Mr. Evangelista and the court revisited the discussion of calling Mr. Grenz as a witness. (T. at 82-83).  Mr. Evangelista, stated

11

that he had intended to call Mr. Grenz to question him regarding the ineffective assistance of counsel claim, but that it was Mr. Evangelista's understanding that the court would let the "papers [speak] for themselves on that point." (T. at 83).  The judge then stated

> ... I'm not going to let you, ... call him up here, say, listen. [sic] Why didn't you ask this question, not this question. No.  I'm not going to subject him to that.  That is not the purpose of this kind of hearing.

(T. at 83).  Mr. Evangelista then stated that petitioner had no more witnesses. (T. at 83).

### A. Exhaustion of State Remedies

Respondent argues that petitioner has not exhausted his state court remedies and has also procedurally defaulted on this claim.  Petitioner's direct appeal from his conviction and the appeal of the section 440.10 denial were heard together in the Appellate Division, and the court rendered one decision for both appeals. *People v. Hall*, 268 A.D.2d 682, 701 N.Y.S.2d 489 (3d Dep't 2000).  Petitioner's counsel did not raise the issue on the consolidated appeals, nor did petitioner raise the issue in his pro se motion for reconsideration in the New York Court of Appeals.  However, petitioner mentioned this issue in his recent *coram nobis* application, claiming ineffective assistance of appellate counsel.  Petitioner attached

a copy of his application for writ of error *coram nobis* to his motion for a stay in

this action. (Dkt. No. 18).

The habeas statute requires the exhaustion of state court remedies prior to

bringing an application for federal habeas corpus relief. 28 U.S.C. § 2254(b).  In

order to properly exhaust his state remedies, the petitioner must have fairly

presented his claims so that the state court has the opportunity to decide any federal

constitutional issues. *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994), *cert. denied*

515 U.S. 1118 (1995).  The petitioner must also have presented the substance of his

federal claims to the highest available court of the state. *Bossett v. Walker*, 41 F.3d

825, 828 (2d Cir. 1994), *cert. denied*, 514 U.S. 1054 (1995)(citation omitted).

Petitioner raised this claim in his application for writ of error *coram nobis*.  It

appears that the issue was raised as a substantive claim, not only a claim that

petitioner's appellate counsel was ineffective in failing to raise the witness issue on

appeal. *See* Attachment to Motion for Stay at pp.34-36.  Petitioner cited the United

States Constitution in his point heading. *Id.* at p.34.  In *Aparicio v Artuz*, 269 F.3d

78, 92 (2d Cir. 2001), the Second Circuit held that a claim raised in an application

for writ of error *coram nobis* was adjudicated and exhausted when the Appellate

Division denied the motion even if it did not technically address the claim.  The

Second Circuit came to this conclusion notwithstanding the fact that the claim in

question was a substantive claim, not related to the claim of ineffective assistance of appellate counsel, which was the purpose of the *coram nobis* application.  In fact, the Second Circuit discussed this issue in a very long footnote, stating that whether the Appellate Division could properly have entertained such a claim was "entirely different from whether Aparicio raised the claim in state court." *Id.* at 87 n.1.  Thus, based on *Aparicio*, this court finds that petitioner's first claim has been exhausted.

The court also notes that respondent argues in any event that petitioner has also failed to exhaust his ineffective assistance of appellate counsel claim because he failed to appeal the Appellate Division's denial of his application for writ of error *coram nobis* to the New York Court of Appeals.  If this argument were successful, it would also mean that petitioner's first claim is unexhausted since the claims were both in the application for writ of error *coram nobis*.  As stated above, once a petitioner brings his federal claim in state court, he must appeal the denial of the claim to the highest court available for review. *Bossett*, 41 F.3d at 828.

Although a party may ***now*** seek leave to appeal a denial of a *coram nobis* application from the Court of Appeals, that amendment to the New York Criminal Procedure Law became effective ***November 1, 2002.***  *See Brooks v. Donnelly*, 2003 WL 23199559, at *1 (E.D.N.Y. Dec. 8, 2003); 2002 N.Y. Laws ch. 498, § 1.  In this case, the Appellate Division denied petitioner's *coram nobis* application on

14

***October 4, 2002.***  Petitioner could not have known that the law was about to change less than one month after the decision on his application, and Judge Kahn's order staying this action gave petitioner only thirty days within which to inform the court of a final decision by the state court.  At the time petitioner's application for *coram nobis* was denied, there was no appeal ***available*** to him, and he cannot be faulted for failing to bring an appeal that was not available at the time the Appellate Division denied his application, particularly when he had a limited time within which to return to this court.  Thus, this court finds that petitioner has exhausted his state court remedies with respect to both his witness claim and his ineffective assistance of appellate counsel claim.  The court may proceed to the merits.

### B.  Merits

Although petitioner claims that Justice Breslin's refusal to allow Mr. Evangelista to call Mr. Grenz as a witness at his section 440.10 hearing was a violation of due process, federal law does not require that the state court provide ***any means*** of collateral review of convictions in criminal cases. *Ruiz v. Artuz*, 99 Civ. 4476, 2002 U.S. Dist. LEXIS 17779 *19-20 (S.D.N.Y. June 13, 2002)(citing *inter alia Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987)).  Additionally, even when criminal defendants are afforded a collateral remedy, the denial of a hearing does not give rise to a due process claim. *Id.* (citing *Boyd v. Hawk*, 94 Civ. 7121,

15

1996 U.S. Dist. LEXIS 21279 *4 (S.D.N.Y. May 31, 1996)).

In this case, petitioner ***was afforded an in-person hearing***, he was merely denied one witness at the hearing. The court clearly had petitioner's papers, alleging ineffective assistance of counsel, the court held a full hearing on the *Rosario* issue, and Judge Breslin stated that he would have allowed Mr. Grenz as a witness if he had information relevant to the *Rosario* issue. (T. at 83). If the denial of an entire hearing does not rise to the level of a constitutional violation, then the denial of a witness based on the lack of necessity does not rise to the level of a constitutional violation. This court cannot find that the State court's decision was contrary to federal law, unreasonably applied federal law, or was based upon an unreasonable interpretation of the facts when it denied this claim without opinion in petitioner's *coram nobis* application. Thus, petitioner's first claim may be dismissed.

**4.    *Rosario/Brady* Claims**

Petitioner's third and fourth claims deal with the prosecution's alleged failure to produce information that petitioner claims would have affected the outcome of his trial. Respondent argues that these two claims are procedurally barred because the Appellate Division denied the claims based on an independent and adequate procedural basis.

## A. *Rosario*

The court need not reach the issue of whether petitioner has procedurally

defaulted on his *Rosario* claims because the obligation to disclose *Rosario* material

arises solely under state law. *Alston v. Ricks*, 01 Civ. 9862, 2003 U.S. Dist. LEXIS

38 *16-17 (S.D.N.Y. Jan. 7, 2003)(citing *inter alia Benito v. Fisher*, 2001 U.S. Dist.

LEXIS 6181, 2001 WL 506180 at *2 (S.D.N.Y. June 18, 2001). In *Flores v.*

*Demske*, 215 F.3d 293, 305 (2d Cir.), *cert. denied*, 531 U.S. 1029 (2000), the

Second Circuit held that the waiver of a potential *Rosario* claim that would have

entitled petitioner to a new trial if raised before the trial court could constitute

ineffective assistance of counsel.  The court focused on the ineffective assistance of

counsel, not the merits of the *Rosario* issue alone.

This court finds that petitioner's *Rosario* claims can only be considered in

conjunction with his claim for ineffective assistance of counsel, and will consider

them below.[6]  Thus, petitioner's third claim, to the extent that it alleges a

---

[6] Although respondent argues that petitioner's *Rosario* claims are procedurally barred from review because the Appellate Division ruled that the claims were "unpreserved", this court finds that only one of petitioner's *Rosario* claims would have been procedurally barred.  It must be kept in mind that petitioner was appealing two different decisions to the Appellate Division, petitioner's direct appeal from his conviction and petitioner's appeal from the denial of his section 440.10 motion.  In its decision, the Appellate Division treated the two appeals separately.  There were two separate *Rosario* claims brought.  Petitioner claimed in his direct appeal that the alleged *Rosario* violation constituted **per se reversible error**. Petitioner's Appellate Brief at pp.7-11.  The second *Rosario* issue related to the claim made during petitioner's section 440.10 proceedings.  In the second claim, the petitioner was required to show "**prejudice**" from the violation. Petitioner's

substantive *Rosario* violation may be dismissed because it does not rise to the level of a constitutional violation.

### B. *Brady*

Although respondent also claims that petitioner's *Brady* claim is procedurally barred, a review of the Appellate Division's decision shows that the court never mentioned procedural default in connection with petitioner's *Brady* claim. The only mention of *Brady* is in conjunction with a denial **on the merits.** 268 A.D.2d at 685-86, 701 N.Y.S.2d at 492. Therefore, this court may consider the merits of the petitioner's third claim as it relates to *Brady*, and petitioner's fourth claim that raised a *Brady* claim alone.

A prosecutor has the duty under *Brady v. Maryland*, 373 U.S. 89 (1963) to

---

Appellate Brief at pp.17-20. In the first claim, a *Rosario* violation alone would suffice, while in the second claim, petitioner would have to show prejudice from the violation to succeed.

The Appellate Division dismissed petitioner's first *Rosario* claim based on a procedural default, stating that the claim was "unpreserved for appellate review **on direct appeal**." 268 A.D.2d at 683, 701 N.Y.S.2d at 491. The Appellate Division then decided the merits of petitioner's second *Rosario* claim. *Id.* 268 A.D.2d at 683-84, 701 N.Y.S.2d at 491. A close reading of the Appellate Division's opinion shows that the court was not deciding the same issue in the alternative, but was deciding two separate issues, one on procedural grounds and one on the merits.

Thus, although petitioner's *per se Rosario* violation claim would be considered procedurally defaulted, the second would not be procedurally barred. This interpretation is further supported by the fact that Judge Breslin held an extensive hearing on the second *Rosario* issue during the section 440.10 proceedings and made specific fact findings. A copy of Judge Breslin's decision is attached to petitioner's appellate brief. Appendix to Petition's Brief at pp.4-8. There would be no reason for the Appellate Division to hold that the issue was "unpreserved for appellate review."

produce evidence favorable to the defense.  To prevail on a *Brady* claim, petitioner must show that the prosecution suppressed evidence favorable to him and that the evidence was material either to guilt or punishment. *Brady*, 373 U.S. at 87. "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Payne*, 63 F.3d 1200, 1209 (2d Cir. 1995)(quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)), *cert. denied*, 516 U.S. 1165 (1996).  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the case.  *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987).  When the issue is late disclosure of *Brady* material, a new trial is required only when the defendant was deprived of a meaningful opportunity to use the material. *Freeman v. Kuhlman*, 96 CV 3749, 1998 WL 661469 (E.D.N.Y. Aug. 3 1998)(citing *People v. Cortijo*, 70 N.Y.2d 868, 870, 523 N.Y.S.2d 464, 464 (1987)).

If defense counsel knew or should have known of essential facts permitting him to take advantage of exculpatory evidence, then the evidence is not considered withheld for *Brady* purposes. *United States v. Zackson*, 6 F.3d 911, 918 (2d Cir. 1995).  Disclosure of impeachment evidence is also required under *Brady.  United States v. Bagley*, 473 U.S. 667 (1985).  Evidence relevant to impeachment is

19

material if the "witness whose testimony is attacked supplied the only evidence linking [the defendant] to the crime, or where the likely impact on the witness's credibility would have undermined a critical element in the prosecution's case." *United States v. Wong*, 78 F.3d 73, 79 (2d Cir. 1996).

In this case, the Appellate Division stated that it found "no merit to defendant's assertion that the alleged tape recording and arrest report constituted *Brady* material, the nondisclosure of which violated his due process rights." 268 A.D.2d at 685, 701 N.Y.S.2d at 492. Because the Appellate Division clearly decided the *Brady* claims on the merits, this court must utilize the AEDPA deferential standard.

With respect to the "alleged" tape recording of the conversation between Officer Monte and the dispatcher in which officer Monte allegedly discussed the factual details of the arrest, the Appellate Division found that the petitioner failed to establish that the tape even existed or that if it did exist, it was available to the prosecution. 268 A.D.2d at 684, 701 N.Y.S.2d at 492. At trial, Officer Monte stated that after the officers arrested Doris Everett, they called for a paddy wagon. (RA. at 300). During his Grand Jury testimony, Officer Monte had stated that "we notified the dispatcher of what we had seen and what incident had occurred." Petitioner's Appellate Brief Appendix at 31.

During the in-person, section 440.10 motion hearing, the court heard the witnesses testify and concluded that petitioner had not established that any tape existed. *Id.* at 7.  Petitioner has not rebutted this finding of fact by clear and convincing evidence as required by the AEDPA.  Other than petitioner's statement that a tape must have existed and that it was destroyed, there is no evidence to contradict the State courts' finding that there may never have been a tape, and that the officers were not in the habit of describing the events of a crime when calling the dispatcher for a paddy wagon.

Additionally, there is no indication, even if a tape existed that the tape would have been exculpatory or would have contained any information inconsistent with the officers' testimony at trial so that evidence would be relevant to impeachment.

With respect to Doris Everett's arrest report, the County Court found, and the Appellate Division affirmed, that petitioner had possession of the document ***prior to trial***. 268 A.D.2d at 685, 701 N.Y.S.2d at 492.  The Appellate Division relied upon the testimony at petitioner's parole revocation hearing that occurred long before petitioner's trial, supporting the finding that petitioner himself was in possession of the arrest report.  If petitioner had the report prior to trial, regardless of how he obtained the report, it is clear that *Brady* was not violated.  Petitioner has failed to come forward with clear and convincing evidence to rebut the presumption that the

21

State courts' finding of fact is correct.

The parole revocation hearing transcript is part of the first volume of the record on appeal.  Although petitioner had an attorney present at the hearing, he asked his own questions.  During Officer Monte's testimony, petitioner was trying to argue that he was arrested before Ms. Everett and therefore, the officers could not have had "probable cause" to arrest petitioner based upon Ms. Everett's statements. The petitioner was clearly comparing his arrest report with that of Doris Everett when he was cross examining Officer Monte, and petitioner stated

> THE PAROLEE: I mean, a three year-old baby could see
> that from the number that's here. I was arrested first [sic]
> and she was arrested second.

(RA. at 70).  Petitioner could not have been making the statement that anyone could see who was arrested first if he did not have the two arrest reports in his possession or had at least seen both reports.  He was already making arguments regarding the alleged invalidity of Officer Monte's actions, based on Ms. Everett's report, long before trial. Thus, the record supports the State courts' finding that petitioner already had the arrest report.  If petitioner possessed the information, then *Brady* was not violated, and the State court's finding in this respect is not contrary to or an unreasonable interpretation of established federal law.  Petitioner's third and fourth claims may be dismissed in their entirety.

22

**5.**      **Ineffective Assistance of Counsel**

   **A. Trial Counsel**

   The well-established Supreme Court precedent, provides that a claim of ineffective assistance of counsel is sustainable only if counsel's representation fell below an objective standard of reasonableness, and there is a reasonable probability that, absent counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992), *cert. denied*, 508 U.S. 912 (1993).  In applying this test, a reviewing court must be "highly deferential" and presume that counsel's conduct falls within the range of reasonable performance.  *Strickland*, 466 U.S. at 689.

   In this case, the Appellate Division stated that it had considered petitioner's "remaining contentions" such as the claimed ineffective assistance of counsel, and found them to be "devoid of merit." 268 A.D.2d at 686, 701 N.Y.S.2d at 492-93. Because the Appellate Division decided the ineffective assistance of counsel claim "on the merits," the AEDPA standard applies.

   One of the bases for claiming ineffective assistance of counsel on appeal and at the section 440.10 motion was that counsel failed to recognize a *Rosario* claim that would have necessitated a reversal of petitioner's conviction.  If true, the Second Circuit has held that an application of the *Strickland* standard could dictate

23

a finding in petitioner's favor. *Flores v. Demskie*, 215 F.3d at 303-05.

This case is distinguishable from *Flores*.  In *Flores*, evidence in question was a memo book, containing statements by the victim's mother to one of the police officers. *Id.* at 295.  The victim's mother testified for the prosecution, and during jury selection, petitioner's trial attorney became aware that the prosecutor had failed to turn over the memo book. *Id.*  Petitioner's attorney did not bring the fact to the court's attention until the end of the State's case-in-chief. *Id.*  The memo book was not produced until after the guilty verdict. *Id.*  Petitioner's counsel then stated that there was nothing in the memo book that would have made any difference in terms of counsel's strategy. *Id.*  Although counsel subsequently made a motion to set aside the verdict, the motion was based upon the weight of the evidence. *Id.*

The petitioner in *Flores* did not move to vacate his conviction based on the *Rosario* violation until two years after the conviction. *Id.*  The petitioner's attorney submitted an affidavit stating that he was not aware that the failure to turn over the memo book, unless waived, would require *per se* reversal, and instead believed that in order to have prevailed on the claim, he would have had to show prejudice. *Id.*

After conducting an inquiry into whether the material in question was

*Rosario* material,[7] the Second Circuit held that the memo book was *Rosario*

material, and trial counsel's failure to be aware that a violation of *Rosario* required

reversal of the conviction regardless of prejudice was objectively unreasonable

under *Strickland* and prejudiced petitioner because his conviction would have been

reversed had counsel not waived the issue. *Id.* at 300-05.

In this case, Judge Breslin held a hearing on petitioner's section 440.10

motion, finding that there was no proof that a tape of the conversation between

Officer Monte and the dispatcher ever existed. Appendix to Petitioner's Appellate

Brief at 7.  The Appellate Division affirmed, finding that the County Court properly

concluded that the petitioner had failed to establish that a tape existed or that if it

did exist, that it was available to the prosecution. 268 A.D.2d at 684, 701 N.Y.S.2d

at 492.  Although acknowledging that if a tape did exist, and if it contained

statements about what the officers had seen and what had occurred, it "could

potentially constitute *Rosario* material," it remained the petitioner's responsibility

to show both that a tape existed and that it was available to the prosecution. 268

A.D.2d at 684, 701 N.Y.S.2d at 491.  The Appellate Division's fact findings in this

regard have not been contradicted by petitioner with clear and convincing evidence.

---

[7] The District Court in *Flores* held an evidentiary hearing to determine whether the material in question was *Rosario* material since there was no such determination at the State court level.

Thus, counsel's failure to raise the *Rosario* and *Brady* claims could not be a basis

for finding that the attorney's conduct was objectively unreasonable.  The court will

now turn to petitioner's other bases for alleging ineffective assistance.

Petitioner also claims that trial counsel failed to interview "a number" of

"alibi/eye witnesses" that petitioner brought to his attention.  Petitioner raised this

basis for his ineffective counsel claim on the appeal of his conviction and his

section 440.10 motion. Petitioner's Appellate Brief at p.25.  Petitioner claimed in

his section 440.10 motion that counsel failed to interview an individual named Carl

Newman, who signed a statement saying that to his "knowledge and belief ...

[petitioner] did not pass any drugs to one Doris Everett on the day of September 14,

1994."  Petitioner's Section 440.10 Motion at Ex. I.  Mr. Newman further stated

that he was with petitioner outside the T.C. Club at approximately ten o'clock that

night.  According to Officer Boardman's testimony, the T.C. Club is at 36 North

Swan Street. (RA at 370-71).

Petitioner also claims that an individual named Edward Maxim was also

standing with petitioner outside the T.C. Club on North Swan Street the night of the

sale, and that Mr. Maxim was wearing an Albany Sanitation Department uniform

which was "in the same nature of what petitioner was wearing".  Petitioner claims

that his counsel's failure to interview these witnesses or put them on the stand is a

26

basis for asserting ineffective assistance of counsel.

As stated above, the court must presume that counsel's conduct fell within the range of reasonable performance. *Strickland*, 466 U.S. at 689. Petitioner states that counsel failed to interview "a number of" witnesses, but only names two of those witnesses. Additionally, petitioner refers to the witnesses as "alibi/eye" witnesses. Clearly from Mr. Newman's statement, petitioner was at the location of the sale, or at least next door, since Mr. Newman states in his affidavit that he was with petitioner at the T.C. Club on September 14, 1994. Petitioner also claims that Mr. Maxim was present at the same time and was wearing clothes similar to petitioner's.

The court does not question trial strategy, including the decision of what witnesses to call as long as the strategy advances the client's interests. *See Eze v. Senkowski*, 321 F.3d 110, 132 (2d Cir. 2003)(citations omitted). A review of Carl Newman's statement shows that it is vague at best. Petitioner's Section 440.10 Motion, Ex. I. Mr. Newman stated that it was his "knowledge and belief" that petitioner did not pass drugs to Ms. Everett on September 14, 1994. *Id.* Mr. Newman also stated that he was standing in front of the T.C. Club with petitioner at "around" ten o'clock on September 14, 1994. *Id.*

Petitioner states that his trial counsel should have interviewed these

individuals and called them as witnesses and further states that petitioner mentioned

these names at the Grand Jury proceedings.  The court first notes that although

petitioner testified before the Grand Jury that he was playing basketball with many

individuals on the night in question and then stated that he and these friends walked

up to the T.C. Club and were standing outside the club at approximately ten

o'clock, he did not even mention Carl Newman as one of those individuals, and Mr.

Maxim was not mentioned with that name.[8]  When asked who he was with,

petitioner stated that he was with "[o]ne guy named Milton and one guy named

Curtis, one guy named Pahlo and one guy named Frank.  I can name a whole lot of

them." (RA. at 116).  Thus, petitioner's statement that he mentioned the alleged

alibi witnesses at the Grand Jury proceeding is not accurate, even though from his

more recent papers, he implies that Pahlo is Mr. Maxim.

The court also notes that when Mr. Newman gave his statement August 1,

1995, petitioner's trial counsel Mr. Grenz was not representing petitioner.  In April

of 1995, petitioner asked that he be able to represent himself because he was

allegedly unsatisfied with Mr. Grenz's performance. (RA. at 124-84).  The court

retained Mr. Grenz as "stand-by" counsel over his objection, but specifically told

---

[8] The court also notes that Mr. Grenz was not petitioner's counsel at the Grand Jury proceeding, although petitioner argues, and it is likely, that Mr. Grenz had the Grand Jury transcript.

petitioner that Mr. Grenz's job would not involve anything other than questions in open court, and that he would not "take over the case." (RA. at 181-83).  The record contains other transcripts of proceedings held between April, 1995 and late August 1995 in which petitioner was clearly proceeding *pro se.*  However, by November 27, 1995 when the trial started, Mr. Grenz appeared to be representing petitioner again. (RA. at 237).

There is no evidence that the decision not to call the two witnesses proposed by petitioner, if in fact he proposed the witnesses, was anything but trial strategy and a decision that the witnesses would not assist petitioner's case.  Mr. Newman's affidavit states that petitioner did not pass drugs to Doris Everett that night, however, that statement in itself is questionable and a conclusion that Mr. Newman was probably unable to make.  At best, Mr. Newman might have been able to testify that he did not see the transaction.  However, the officers testified that when Ms. Everett approached petitioner, he got up from the stairs and walked a few steps along the building.  It is possible that Mr. Newman did not see petitioner handing drugs, which petitioner apparently had in his mouth, to Ms. Everett.

With respect to Mr. Maxim, petitioner's allegations are completely speculative that Mr. Maxim's testimony would have assisted his case.  Maxim's only "proposed testimony" was that he was similarly dressed to petitioner and was

in the same location on September 14, 1994 at the same time.  There is no

indication whether any of Mr. Maxim's other characteristics, such as height or

weight might have been the same as petitioner's or whether he was standing in the

same area as petitioner.

Petitioner simply assumes that counsel did not investigate or consider these

witnesses.  However, counsel could have made the strategic decision that their

testimony would not be helpful, and decided not to call them.  Counsel's strategy

was to use the fact that Ms. Everett could not identify petitioner as the seller of the

drugs and thus raise a reasonable doubt that it was petitioner who committed the

crime.  Counsel emphasized this on cross-examination of the officers on their

ability to see clearly from their vantage point.  This court would point out that both

of petitioner's proposed witnesses were going to testify that petitioner was in fact in

front of the T.C. Club on the night and time in question.  This could have been more

damaging to petitioner's case than helpful.  This court cannot find that the

Appellate Division's finding that petitioner's ineffective assistance of counsel claim

had no merit was contrary to well established federal law or an unreasonable

application of the facts.

## B.  Appellate Counsel

Petitioner's final claim is that his appellate counsel was ineffective in failing

to raise a myriad of claims on petitioner's consolidated appeal.  Petitioner did not

bring this claim in his original petition.  He requested, and was granted, a stay of

this petition while he returned to State court to exhaust this new claim.  Petitioner

moved for a writ of error *coram nobis* in the Appellate Division which is the proper

vehicle for challenging the ineffective assistance of appellate counsel. *See People v.

Bachert*, 69 N.Y.2d 593, 596, 516 N.Y.S.2d 623, 624-25, 509 N.E.2d 318 (1987)

(writ of error coram nobis is the proper vehicle to challenge the effectiveness of

appellate counsel in state court).  As stated above, the Appellate Division, Third

Department denied petitioner's application on October 4, 2002.  Petitioner was

allowed to file an "addendum" in this case to raise the additional claim. (Dkt. No.

24).

The *Strickland* test also applies to claims of ineffective assistance of

appellate counsel. *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992)(applying the

*Strickland* test to appellate counsel).  Thus, the petitioner must show that his

appellate attorney's performance "fell below an objective standard of

reasonableness." *Strickland,* 466 U.S. at 688.  An appellate attorney, however, is

not required to raise every nonfrivolous argument,[9] and in order to establish

**constitutionally** ineffective assistance of counsel, the petitioner must show that

---

[9] *Jones v. Barnes*, 463 U.S. 745, 754 (1983).

appellate counsel omitted "significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 532 (2d Cir. 1994).

Petitioner cites a laundry list of things that appellate counsel should have raised, including unlawful arrest, prejudice before the Grand Jury when petitioner was brought to the proceeding in shackles, trial counsel's failure to move for suppression as well as trial counsel's failure to use proper case law in a motion *in limine*, denial of petitioner's right to be present at a side bar conference, failure of the trial court to dismiss a juror, failure of the prosecutor to give petitioner sufficient notice of the prosecution's intent to introduce identification evidence, and conflict of interest of some of petitioner's assigned attorneys.  Petitioner also claims that appellate counsel failed to keep his promise to obtain "time-served" as a sentence for petitioner, and caused petitioner to be denied effective appellate review because he filed the appeal with missing transcripts.  Finally, petitioner argues that appellate counsel erred in failing to raise the claim that the trial court judge improperly denied counsel's request to call petitioner's trial counsel as a witness at the section 440.10 hearing.

On the consolidated appeal from petitioner's conviction and from the denial of petitioner's section 440.10 motion, appellate counsel raised the *Rosario/Brady*

issues, petitioner's claim of ineffective assistance of trial counsel for failure to call the potential witnesses, his failure to recognize the *Rosario/Brady* issues, and the harshness of petitioner's sentence.

The Appellate Division simply denied petitioner's application for writ of error *coram nobis* without explanation, thus, this court finds that the denial was "on the merits," and the AEDPA standard applies to petitioner's claim of ineffective assistance of appellate counsel. A review of petitioner's proposed claims shows that the Appellate Division did ***not*** act contrary to federal law when denying this claim.

As stated above, the trial court's failure to call Mr. Grenz as a witness at the section 440.10 hearing was not an error, and thus, counsel's failure to raise this issue on appeal was not in error. With respect to the conflict of interest claim, petitioner claims that the Public Defender's Office originally represented him and Doris Everett. Although this ***may*** be true, when petitioner raised the conflict of interest issue, Judge Breslin assigned Mr. Grenz, an attorney not associated with the Public Defender's Office. (RA. at 93). This assignment occurred on February 2, 1995, well before the trial that began on November 27, 1995. Thus, plaintiff's claim of conflict of interest was not a claim that Mr. Evangelista should have raised on appeal.

33

The juror issue would not have been preserved for review.  During the jury voir dire, a juror was concerned because she thought that the judge mentioned the juror's husband's name, and where he worked, and thus, petitioner or his friends might know where the juror lived. Petitioner's Record of Writ of Error *Coram Nobis* (CN) at 47-48 (excerpt of trial transcript).  The attorneys were brought in to discuss the issue with the juror, and petitioner's counsel assured her that petitioner did not indicate that he recognized her. (CN at 48-49).  The juror was also concerned about individuals to whom petitioner was waving.  Petitioner's counsel stated that he did not communicate with those people. (CN at 49).  The court then said "Okay.  That's not going to influence you?" (CN at 49).  The juror simply stated "Okay.  Fine." *Id.*

Although petitioner argues that this was insufficient inquiry, his counsel did not object, and in fact, was attempting to reassure the juror that petitioner had not recognized her or her husband.  Thus, attempting to raise this claim on appeal would have met with a procedural default, and appellate counsel acted reasonably in not including this claim on appeal.

Petitioner also claims that the prosecutor did not give petitioner notice of the intent to produce identification evidence.  Petitioner claims that if he had been aware of the police officers' proposed identification, he would have moved to

suppress it, as well as the money that was found on petitioner after the arrest.  Once again, aside from the lack of merit in this argument, trial counsel never objected to this, and appellate counsel's failure to raise the issue on appeal was not unreasonable.

Finally, without going through every claim in detail that petitioner alleges that appellate counsel should have raised, this court finds that a review of these claims shows that appellate counsel did not act unreasonably in failing to raise every issue desired by petitioner, and that the failure to do so did not result in prejudice to petitioner.  As stated above, appellate counsel need not raise every issue, even if the argument is non-frivolous.  Therefore, the Appellate Division's rejection of petitioner's *coram nobis* application did not violate the AEDPA standard, and petitioner's final claim may be dismissed.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that the petition be **DENIED and DISMISSED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v.*

*Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


Dated: April 7, 2004

Hon. Gustave J. DiBianco
U.S. Magistrate Judge